# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs March 29, 2011

## STATE OF TENNESSEE v. JOHN ANTHONY LETHCO

**Appeal from the Circuit Court for Sevier County**
**No. 12885-II     Rex Henry Ogle, Judge**

---

**No. E2010-00058-CCA-R3-CD - Filed May 9, 2011**

---

A Sevier County Circuit Court jury convicted the defendant, John Anthony Lethco, of aggravated burglary, *see* T.C.A. § 39-14-403; possession of burglary tools, *see id.* § 39-14-701; theft of property valued at $60,000 or more, *see id.* § 39-14-103, -105(5); and theft of property valued at more than $500 but less than $1,000, *see id.* § 39-13-103, -105(2).  At sentencing, the trial court ordered the defendant to serve an effective sentence of 27 years' incarceration.  On appeal, the defendant contends that the trial court erred (1) by denying his motion to sever offenses, (2) by allowing hearsay testimony from witnesses other than the victim concerning ownership of stolen items at trial, (3) by denying him the opportunity to confront his accuser at trial, (4) by denying his motion for new trial, and (5) by allowing argument by the State at trial concerning his reputation as a drug dealer.  Because the defendant filed his notice of appeal prior to filing his motion for new trial, the trial court was without jurisdiction to rule on the motion for new trial.  Thus, any issues raised therein are waived.  We discern, however, an anomaly in the judgment of theft of property valued at more than $500 but less than $1,000 that requires correction on remand.  In all other respects, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Andrew E. Farmer, Sevierville, Tennessee, for the appellant, John Anthony Lethco.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; James B. Dunn, District Attorney General; and Steven R. Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

On September 5, 2007, at approximately 7:30 a.m., Pigeon Forge Police Department patrol officer Jason Baiamonte observed a vehicle that "caught his eye" because of its poor condition and expired registration tags. He activated his blue lights and stopped the vehicle in the parking lot of J & B Market in Pigeon Forge. When he asked the driver to produce a driver's license, the driver, later identified as the defendant, told Officer Baiamonte that he did not have a valid driver's license. Because he had allowed passengers with valid driver's licenses to drive vehicles in similar situations, Officer Baiamonte approached the passenger, later identified as David Way, to inquire about his driver's license. At that time, he noticed that Mr. Way smelled like marijuana and that the vehicle, a van, was piled with loose soft drinks. He then suspected that the men had been burglarizing vending machines, an offense he described as fairly common in Pigeon Forge.

Officer Baiamonte asked the defendant if he had any weapons. When the defendant admitted having several knives, Officer Baiamonte asked the defendant for consent to search the van. The defendant consented without limitation. Officer Baiamonte discovered "piles of . . . stuff" in the van and soon realized that "there was a burglary that had been committed somewhere." When Officer Baiamonte discovered stock certificates issued to Pershing McCarter, he asked the defendant why he had them. The defendant told Officer Baiamonte that "they had just packed up a bunch of belongings and . . . he didn't know who all's stuff he had or how he had come in contact with it." Through his continued search, Officer Baiamonte discovered burglary tools and jewelry. Of most significance, he found $100, $50, and $20 bills totaling $92,350 in a duffel bag in the back of the van. Officer Baiamonte arrested the defendant and towed the van to the police station for processing.

At the police station, the defendant initially claimed that the items in the van belonged to him. After waiving his *Miranda* rights, the defendant, however, said that he "wanted to take the fall for everything himself," admitting that the items were stolen, and he asserted that Mr. Way had no involvement in the theft of the items.

Marsha Wilson, Pershing McCarter's daughter, testified that her 82-year-old father lived alone within one block of the Pigeon Forge Police Department. She stated that her father had "a doctor's excuse" from the trial because his health precluded him testifying. Although her father lived alone, she said that she and her siblings saw him every weekend and took care of his shopping and household duties throughout the week.

On September 5, her father, as was his normal routine, left his home at approximately 5:00 a.m. and drove to his business, McCarter Lumber Company, in Gatlinburg where he "open[ed] the office" and had coffee with his son, Mitchell McCarter.

Her father then drove to the lumber company's Pigeon Forge office to see Ms. Wilson. She recalled that he arrived at the Pigeon Forge office at approximately 6:30 a.m. At approximately 7:30 a.m., the family received a telephone call from the Pigeon Forge Police Department inquiring about a possible burglary at Pershing McCarter's home. Upon arrival at her father's home, they noticed that all the wiring into the house had been cut and that the back door had been pried open. Inside, the family found that the house had been ransacked and that jewelry, watches, and coins were missing. The victim's knife collection, stock certificates, and money that he had kept in an unlocked safe were also gone. Ms. Wilson testified that soft drinks were even missing from the victim's kitchen counter and that "someone had taken some milk out of the refrigerator and drank some milk." Although she was not aware of the exact amount of money the victim kept in his house, she was able to identify bank bags from the Tennessee State Bank as those used by the victim to keep money secured in the safe.

Ms. Wilson's brother and the victim's son, Mitchell McCarter, testified consistently with Ms. Wilson concerning the events leading to the discovery that the victim's home had been burglarized. Like his sister, he was not personally aware of the amount of money kept in the unlocked safe, but he recalled his father's telling him that the stolen money totaled over $100,000. Mr. McCarter also testified that four guns were stolen from the victim's residence. He explained that the victim's home was surrounded by a wooden fence, which had three-foot-wide "walk-throughs" in several places, and that the victim's carport could be observed from a nearby field behind the property.

In the defendant's van, Pigeon Forge Police Department Officer Wayne Knight discovered a stereo system that was eventually linked to Jonathan King. Officer Knight also found bolt cutters, wire cutters, lineman pliers, a crowbar, and a police scanner radio in the van. He recalled finding gloves within the piles of clothing recovered from the van. Although fingerprints were taken at the victim's home, none were taken from the items found in the van. No fingerprints matching the defendant were discovered.

Jonathan King testified that his car was burglarized and an uninstalled car stereo system was stolen while his car was parked in a parking lot next to the Sevierville Police Station. He did not report the theft because he just considered the stereo "lost." Several days later, however, an officer from the Pigeon Forge Police Department telephoned him when the stereo was found in the defendant's van, along with paperwork indicating Mr. King may be its owner. Mr. King estimated the value of the stereo system to be $900.

The defendant did not testify at trial. He did, however, present the testimony of David Way. Mr. Way testified that, at approximately 9:00 p.m. on September 4, 2007, he visited the defendant at the trailer the defendant shared with Shawn Mullinax. Mr. Way said

that he was planning to fix the defendant's van but that when he got to the trailer, the defendant was passed out in the front seat of the van. He explained that the defendant regularly used drugs and that he could not be revived that night. Mr. Way spoke to Mr. Mullinax for approximately thirty minutes and went home.

Mr. Way said that he returned to the defendant's trailer the next morning, September 5, at approximately 7:00 a.m., intending to fix the van. When he arrived, the defendant exited the trailer quickly with several bags and told Mr. Way that "we need to go now." Mr. Way said that they then left in the van and began traveling, he thought, toward a location where he could fix the van. He recalled that the police stopped the van almost immediately at J & B Market.

Mr. Way admitted that Mr. Mullinax had given him $10,000 to hire a lawyer concerning these and other charges. He said that he had no knowledge of what the defendant and Mr. Mullinax had done between 9:30 the previous night until his arrival that morning at 7:00. Mr. Way denied knowledge of any of the contents in the van. He implied that he had spoken to Mr. Mullinax about the offenses but that Mr. Mullinax "did not actually admit [his] guilt" during their conversation.

Based upon this evidence, the jury convicted the defendant of the aggravated burglary and theft of property valued at $60,000 or more of Pershing McCarter; possession of burglary tools; and theft of property valued at more than $500 but less than $1,000 of Jonathan King. At the December 14, 2009 sentencing hearing, the trial court imposed sentences of 13 and 27 years to be served as a persistent offender for the aggravated burglary and theft of property valued at $60,000 or more convictions, respectively. The court also imposed a sentence of 11 months and 29 days for the possession of burglary tools conviction and a sentence of six years to be served as a career offender for the theft of property valued at more than $500 but less than $1,000 conviction. All the sentences were ordered to be served concurrrently.

On appeal, the defendant contends that the trial court erred by denying his motion to sever for trial the McCarter offenses from the King offense, by allowing the victim's children to testify in the victim's stead concerning the value of the items stolen from the victim's residence, by denying his right to confront the victim at trial, by denying his motion for new trial, and by allowing the State to argue in rebuttal that the defendant was a reputed drug dealer. The State posits that all of these issues, save the issue concerning the defendant's confrontation rights, could be deemed waived for the defendant's failure to include them in his motion for new trial. As we will explain, however, none of the issues raised on appeal have been properly preserved for this court's consideration.

The defendant filed his notice of appeal on January 6, 2010, subsequently to the entry of the judgments but before the defendant's filing of his motion for new trial on January 13, 2010. *See* Tenn. R. App. P. 4(c) (stating that "the time for appeal for all parties shall run from entry of the order denying new trial"). The trial court lost jurisdiction of the case once the notice of appeal was filed. *See State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). Consequently, the trial court did not have jurisdiction to consider and rule on the defendant's motion for new trial. *State v. Hatcher*, 310 S.W.3d 788, 801-02 n.5 (Tenn. 2010). The motion for new trial and accompanying order denying it were completely ineffectual, and those issues which may have resulted in a new trial are waived. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon an error . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived.").

Moreover, in view of the defendant's failure to include an adequate record on appeal, object contemporaneously to evidence and argument at trial, or to cite to appropriate authorities in his appellate brief, we will not exercise our discretion to review the issues for plain error. Tenn. R. App. P. 36(b) (stating that "an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial" where consideration of the error is "necessary to do substantial justice"); *see State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993) (noting that this court must presume a trial court's ruling was correct with respect to an issue when the appellant fails to prepare an adequate record on appeal regarding that issue as is required by Tenn. R. App. P. 24(b)); *see also* Tenn. Ct. Crim. App. R. 10(b) (noting that this court will treat as waived those issues unsupported by argument, citation to authorities, and citation to the record).

*Conclusion*

The defendant waived review of his issues on appeal and is, therefore, not entitled to relief. We note, however, that the judgment of theft of property valued at more than $500 but less than $1,000 indicates that the sentence shall be served as a persistent offender, rather than a career offender as ordered by the trial court at sentencing. On remand, the trial court shall correct that judgment to reflect the proper range classification. The judgments of the trial court are affirmed in all other respects.

_____
JAMES CURWOOD WITT, JR., JUDGE